In the Matter of the Application of the Administrators of the Goods, Chattels and Credits of GEORGE F. GILMAN, Deceased, for Leave to Compromise with GEORGE H. HARTFORD their Respective Claims to the Business known as THE GREAT ATLANTIC AND PACIFIC TEA COMPANY and THE GREAT AMERICAN TEA COMPANY.

THEOPHILUS GILMAN and EDWARD L. NORTON, as Administrators, etc., of GEORGE F. GILMAN, Deceased, Appellants; GEORGE W. SMITH, Respondent.

*Power of a surrogate to approve a settlement of a controversy between administrators and a person claiming to have been a partner of their decedent.*

After the death of George F. Gilman a controversy arose between his administrators and one George H. Hartford as to whether the decedent was the sole owner of an extensive business or whether he and Hartford were partners therein.

The administrators thereupon brought an action against Hartford, who was in possession of the business, alleging that the decedent was the exclusive owner thereof. Hartford brought a counter-action against the administrators alleging that he was a copartner of the decedent, and obtained an injunction restraining the administrators from interfering with the business.

For the purpose of compromising the litigation, an agreement was entered into between Hartford and Gilman's administrators and next of kin, by which all the property of the alleged copartnership was to be transferred to a New Jersey corporation and the stock thereof was to be divided between Hartford and Gilman's administrators in certain specified proportions. The only party objecting to the arrangement was a creditor whose claim was being contested before a referee.

Held, that under section 2719 of the Code of Civil Procedure, giving the surrogate power to "authorize the executor or administrator to compromise or compound a debt or claim, on application, and for good and sufficient cause shown," the surrogate had power, in his discretion, to approve of the proposed settlement of the controversy. (Per INGRAHAM and O'BRIEN, JJ.)

VAN BRUNT, P. J., PATTERSON and HATCH, JJ., concurred in result.

APPEAL by the petitioners, Theophilus Gilman and another, as administrators, etc., of George F. Gilman, deceased, from an order of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 11th day of February, 1903, denying the petitioners' application for leave to compromise with George H. Hartford the claims made by them and the said Hartford, respectively, to the business known as The Great Atlantic and Pacific Tea Company and The Great American Tea Company.

*John J. Crawford*, for the appellant Norton.

*Lincoln McCormack*, for the appellant Gilman.

*William D. Leonard*, for the respondent.

INGRAHAM, J.:

The petitioners, as administrators of the estate of George F. Gilman, presented to the Surrogate's Court a petition alleging their appointment as administrators, etc., of George F. Gilman, deceased, and the issuance of letters of administration on the 11th of March, 1901, by the Surrogate's Court of the county of New York to which jurisdiction the premises rightfully belonged; that the deceased left him surviving no widow or children, his next of kin being brothers and sisters and descendants of brothers and sisters, one of such next of kin having been adjudged an

incompetent person by an order of the Supreme Court of the State of New York and a committee duly appointed of her person and property, and three of the next of kin being infants, all over the age of fourteen years, for whom general guardians have been appointed by the courts of this State ; that at the time of his death the said George F. Gilman was the owner of either an entire or part interest in an extensive business known as the Great Atlantic and Pacific Tea Company ; that this business consisted of the purchase and sale of tea, coffee and other merchandise and that the stock on hand at the time of the death of the said decedent consisted of such merchandise ; that the headquarters and principal office of said business was at the time of the death of the said George F. Gilman in the city of New York ; but such business then was, and now is, carried on in the 198 separate stores, located in twenty-eight different States and in the District of Columbia, 57 of the same being in this State, and the number of persons employed in said business was, and is, upwards of 1,800 ; that from an examination of the books of this business it appeared that at the time of the death of the said Gilman the estimated cost value of such stock amounted to $830,293.17 ; that the leases of property used for this business had been taken in the name of the petitioners' intestate and that the actual aggregate rental thereof amounted to about $445,000 ; that for many years prior to his death the deceased had not given his personal attention to the said business, but committed the direction and management thereof to one George H. Hartford ; and after the death of the said decedent the said Hartford made claim that he was a partner of the decedent in the said business and held the possession of the property thereto as surviving partner ; that an action was commenced by the petitioners as administrators alleging that the deceased was the exclusive owner of the said business, and that this action was subsequently removed to the Circuit Court of the United States for the Southern District of New York ; that in October, 1901, the said Hartford filed a bill in equity in the said United States Circuit Court against the petitioners as administrators of said Gilman alleging that he had been decedent's copartner and asking for an accounting ; that in this latter action an injunction was issued restraining the petitioners from interfering in any way or in any capacity with the business

carried on by this alleged copartnership; that if these suits should be continued a litigation extending over a number of years would involve difficult questions of law and fact, and in the meantime the business itself might be greatly injured by such litigation; but for the purpose of compromising this litigation and preserving the said business all of the next of kin of the said decedent entered into a contract with said Hartford and the petitioners by which all of the property of the alleged copartnership should be transferred to a corporation to be organized under the laws of the State of New Jersey, with a capital stock of $2,100,000, of which $700,000 was to be common stock and $1,400,000 preferred stock, and whereby the entire business was to be transferred to said corporation in payment for said stock, to be issued in the following proportions: $1,250,000 of the preferred stock to be issued to the petitioners and $150,000 of the preferred stock and all of the common stock to be issued to said Hartford. A copy of this contract executed by all the next of kin, including the committee of the incompetent and the general guardians of the infants, the petitioners, as administrators, and by Hartford, was annexed to the petition. It also appeared that claims against the estate aggregating $30,723.30 had been filed with the petitioners and are now being contested by them, and, that in addition, one George W. Smith has filed a claim against the estate which, with interest to March 5, 1901, amounts to the sum of $290,615.43, which claim is also being contested before a referee; that the petitioners have in their hands the sum of $98,846.61 in cash, and that there is also deposited in the Supreme Court of this State two sums aggregating $40,903.31, which the petitioners claim as a part of the estate of the said George F. Gilman, but which are also claimed by one Helen Potts Hall; that the petitioners entered into a contract with said Hartford by which he agreed to furnish the cash necessary to pay the expenses of administration, taxes and claims of creditors in full, the said Hartford to purchase, at the option of the petitioners, for cash, a sufficient amount of preferred stock to realize a sum required for the payment of all these creditors, and other expenses of administration at par.

Upon this petition a citation was issued by the surrogate requiring all persons interested in the estate to show cause why the application should not be granted. No objection was presented, except by

FIRST DEPARTMENT, APRIL TERM, 1903.          [Vol. 82.

George W. Smith, whose claim as creditor is now being contested. The surrogate denied the application upon the sole ground that he was without jurisdiction to entertain it. The surrogate in his opinion seems to recognize that the proposed contract or agreement would be for the benefit of the estate, stating : " I might, therefore, possibly approve a transfer of part of the estate to a stranger in satisfaction of his claim and call it a compromise. I might, on the same ground, ratify a contract admitting the claim made by Mr. Hartford as a surviving partner. But I cannot see clearly how the approval of a transfer of all of the assets of the estate to a New Jersey corporation, in consideration of stock of that corporation, can be justified by any such reasoning. Sales of the property of the estate of a decedent must be made by the personal representatives on their own responsibility. * * * : His investments must also be made upon his own judgment and at his own hazard, and purchases of the stock of a corporation, either foreign or domestic, are not favorably regarded. * * * Under the peculiar circumstances of this case it may well be that the proposed arrangement is a good one. It has received the approval of numerous interested persons, acting under the advice of counsel apparently well informed. I place my refusal to grant the order solely upon the ground of want of jurisdiction."

Upon this appeal the only question before us is whether the surrogate had jurisdiction to grant this application, for it is clear, both from the order entered and his opinion, that he did not examine into the merits of the proposed compromise. The peculiar character of the property involved in this dispute between the administrators and the person in possession of the business of the decedent, claiming to hold it as surviving partner, is such that a simple winding up of the business might be disastrous to those interested in the estate. The value of the business is largely enhanced by its continuance under the management and control of the person to whom the decedent had committed the management of the business during his lifetime. Hartford has sustained his right to the possession of the business and the assets as surviving partner to the extent of procuring an injunction restraining the petitioners from interfering with the business, and under this injunction he was in control of the business as surviving partner. If there was a partnership the interest of the estate consisted solely

of the right to receive one-half of the amount realized from the business after the payment of the debts. If Hartford should not succeed in establishing that he was a copartner, the estate would then be the owner of the business and entitled to require Hartford to account as the agent of the decedent for all the property that had come into his hands as such agent, and for the disposition that had been made of the property after the decedent's death. In either case it would seem that the substantial situation was that the estate had a claim against Hartford for property which the administrators had never been able to reduce to possession and which at the time of the presentation of this petition was in possession of Hartford. It would seem, therefore, to follow that what the petitioners sought to compromise was a claim against Hartford.

By section 2719 of the Code of Civil Procedure the surrogate is given power to " authorize the executor or administrator to compromise or compound a debt or claim, on application, and for good and sufficient cause shown." This section is part of article 1, title 4 of chapter 18 of the Code, which is entitled, " Aid, supervision and control of an executor or administrator." The question here is whether or not the surrogate had power under the provision of this section to authorize the administrators to settle the claim of the estate against Hartford in the manner proposed by this agreement to which all of those interested in the estate have assented, except one creditor whose claim is not established. The application to the surrogate was to " compromise or compound a debt or claim " against Hartford by accepting stock in a foreign corporation to which all of the property which is in dispute is to be transferred, the stock to be issued for a transfer of the decedent's interest in the property to be preferred stock and entitled to dividends before the common stock issued to Hartford now in possession of the property and who claims to be the owner of one-half thereof as a surviving partner shall receive a dividend. It seems to me that such a settlement is a compromise or compound of a claim within this section of the Code. An entirely different question would be presented if the petitioners had obtained absolute possession of this property and proposed to sell it to a corporation. The surrogate would clearly, under this provision of the Code, have no power to authorize such a sale, whether it was all or a part of the decedent's estate. There might

be a doubt whether it could be said to be a compromise of a claim if the petitioners having the possession or title to the property of the decedent had asked to be allowed to transfer all of such property to a person claiming to be a partner in satisfaction of his claim. Such, however, is not the substantial condition presented. Here the administrators have the possession of none of the property. It is all in the possession of a person claiming to be a partner of the decedent and claiming to hold the property as surviving partner, having obtained an injunction in an action brought by him to enforce his rights which restrains the administrators from taking any steps to obtain possession of the property except in the action brought for an accounting by the person claiming to be the surviving partner. The question as to whether such a compromise should be allowed when what the administrators were to receive was stock of a foreign corporation is a question, not of jurisdiction to approve the compromise upon which the learned surrogate decided the application, but whether he should exercise it in favor of the proposed compromise; and it is apparent, both from the order of the surrogate and his opinion, that he did not consider or determine that question. Nor is the question as to whether or not we should approve of such a compromise now before us. All of those interested in the estate, except this one creditor, seem to have approved of the proposed arrangement. It can easily be seen how it might be to the advantage of the interests of those interested in this estate to have this arrangement consummated, but if the surrogate has power to consider, as we think he has, whether it would be for the benefit of the estate, he has the right to consider the interests of those interested and their consent to the arrangement in determining as to the propriety of approving of the arrangement. It may be that under such circumstances the surrogate would be justified in requiring some security to be given by which the opposing creditor would be secured in the event of his establishing his claim, or any part thereof, against the estate. That is a question to be determined by the surrogate in determining whether the application should be granted; but we think that the surrogate had power to approve of this settlement as a compromise of a claim made by the estate against the person claiming to be the partner of the decedent, and as such he should have considered the application upon its merits.

It follows that the order appealed from must be reversed and the matter sent back to the surrogate, with costs of this appeal to abide his final determination.

O'BRIEN, J., concurred; VAN BRUNT, P. J., PATTERSON and HATCH, JJ., concurred in result.

Order reversed and matter sent back to surrogate, with costs of appeal to abide his final determination.