In the Matter of the Estate of RICHARD T. DALY, Deceased.

Surrogate's Court, Orange County, July 9, 1934.

*Watts, Oakes & Bright* [*Charles C. Redfield* of counsel], for the petitioner.

*Samuel W. Eager*, special guardian.

TAYLOR, S. In connection with this accounting and in advance of the contemplated business transactions, the executor applies for instructions regarding the disposition of two mortgages.

This and the Agnes R. Daly O'Connor estate hold two mortgages of $19,000 each, covering adjoining New York city properties. Interest is due and remains unpaid from November 30, 1930, except as to the sum of $1,368; there are unpaid taxes of approxi-

mately $7,500; foreclosure actions have been commenced in which disbursements of a sizeable sum have been incurred which the estate is unable to pay, and, of course, completion of the actions will only add to that sum, with the likelihood that the mortgagees might be required to purchase on the foreclosure sale. In the latter event, the property could not be sold subject to the taxes. (Civ. Prac. Act, § 1087.) The executor has been offered $2,000 for each of these mortgages; and in connection with the sale or assignment thereof asked to consent to substitution of the assignee's attorneys in the foreclosure actions which the assignee would continue at his own cost and expense.

Executors, administrators, trustees and other fiduciaries are appointed to administer the trusts placed with them, which include, of course, the exercise of sound business judgment in dealings in that field, subject to the legal limitations, if any, in the particular instance. The surrogate is not an executor, administrator or trustee, and, generally, should not be called upon to assume the fiduciary's responsibility and usurp that officer's duty. Executors, administrators and trustees should not be permitted, even *pro hac vice*, to abdicate their positions.

There are many instances requiring the exercise of business judgment in which, in the nature of things, the true, adequate picture cannot be presented to the court by the written word, or even oral testimony. Personal inspection of real property, the character of the neighborhood in which located and possible imminent changes therein for better or worse, the responsibility of the obligor and whether he is going ahead or backward, and what is more important in certain cases, whether he is really serious and well-meaning in his promises, are items of which the fiduciary can obtain first hand, intimate knowledge and from them an "intuition," so to speak, which places the fiduciary in far better position to reach a correct solution of the problem in hand.

The Surrogate's Court Act, in section 213, provides that "upon the application of an executor * * * the surrogate *may, for good cause shown*, authorize the compromising or compounding of any debt, claim or demand." The italicized words clearly indicate that it was not the intention of the Legislature that *every* compromise should first be submitted to the surrogate for approval; indeed, if it were otherwise, one could conceive that in these times no surrogate could physically handle the work that might be presented to him.

The cases of *Matter of Leopold* (259 N. Y. 274) and *Matter of Gilman* (82 App. Div. 186; 92 id. 462) are cited in support of this application.

The *Leopold* case is really not in point here. The actual decision in that case was that one of two administrators may compromise a claim; that the objecting administrator should not be directed to join therein, the compromise being valid in spite of his dissent, and that the objecting administrator should be directed to perform a merely ministerial act in carrying out a legally made compromise.

The *Gilman* case unquestionably presented a state of affairs to meet the statutory requirement of " good cause " for the exercise of the surrogate's discretion. There were a number of actions pending, and " if these suits should be continued a litigation extending over a number of years would *involve difficult questions of law and fact*, and in the meantime the business itself might be greatly injured by such litigation " (82 App. Div. 189, italics mine); a simple winding up of the business might be disastrous to those interested in the estate (Id. 190); and there was involved the very important question whether the administrators should be permitted to accept stock of a proposed corporation, " The Great Atlantic and Pacific Tea Company," with a specified financial structure. The business at that time was carried on in 198 stores in twenty-eight different States and in the District of Columbia, and the stock of merchandise and the aggregate rentals were no inconsiderable sums. All of these clearly presented a case for the surrogate assuming jurisdiction and passing upon the question presented.

Unless it is " for good cause shown," the courts have in a number of cases refused to exercise the judgment for the doing of which executors, etc., are appointed. (7 Wait Pr. 453; *Matter of Weissman*, 140 Misc. 360; *Matter of Collmar*, 79 id. 592; *Matter of Hanna*, 119 id. 285; *Matter of Wander*, 141 id. 584; *Matter of Ebbets*, 139 id. 250; *Matter of Storts*, 142 id. 54; *Matter of Giordano*, N. Y. L. J. Feb. 8, 1933; *Matter of Miller*, WINGATE, S., Id. June 26, 1934, p. 3101; *City Bank Farmers Trust Co.* v. *Smith*, 263 N. Y. 292.)

As the question presented merely involves adequacy of consideration upon a sale the petition so far as it asks approval of the contemplated sale of the mortgages will not be entertained.